Commonwealth *v.* Mayhugh, Appellant.

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*N. Nowlis,* with him *John R. Cook,* Trial Defender, *John J. Dean,* Chief, Appellate Division, and *George H. Ross,* Public Defender, for appellant.

*Charles W. Johns,* Assistant District Attorney, with him *Gordon L. Young* and *Robert L. Eberhardt,* Assistant District Attorneys, *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., March 31, 1975:

Following a jury trial the appellant herein was convicted of burglary and sentenced to a term of imprisonment of three and one half to seven years. In this direct appeal he raises two issues of constitutional dimensions: first, that he was denied a fair trial essential to due process of law when the court refused to grant a mistrial or voir dire after a juror may have seen him in the custody of two deputy sheriffs; and second, that he was denied the effective assistance of counsel when the court required his counsel to proceed with trial even though he was unprepared.

I

On the morning of the second day of trial appellant's counsel requested a mistrial based upon a chance observance of the appellant by a juror. The side bar colloquy reveals that one juror was a few minutes late for court and that as she was hurrying down the hall she passed the appellant flanked by two deputy sheriffs, one of whom had a handhold on the appellant. The appellant was not in handcuffs and no restraints other than the handhold were being used. The district attorney who also observed the incident stated that the juror "was running

down the hall in a rather hurried state ... I think she was in such a hurry that I don't believe she noticed anything." The appellant's counsel requested the court to conduct a voir dire of the juror to determine what, if anything, she had seen and whether the incident would prejudice her in her decision. He qualified his remark, however, by adding: "[b]ut the question is, do we do more harm than good doing that?"

The court apparently responded affirmatively to counsel's rhetorical question. The judge denied both the mistrial and the request for a voir dire stating: "we find no basis for the defense counsel's position on this as to any prejudice whatsoever to the defendant. The mere fact he was walking up the hall with the officers and particularly in view of the fact that the officers have been sitting in the courtroom beside or near him all during the trial of this case [does not raise an inference of prejudice]." Record at 286-87.

This appeal, challenging that decision as reversible error, thus raises the issue of whether the inadvertent observance by a juror of a defendant being brought to the courtroom restrained only by the physical proximity of two sheriff's deputies, one of whom is grasping the arm of the defendant, per se requires the grant of a mistrial or a voir dire examination of the juror involved. We hold that it does not.

Due process of law guarantees respect for those personal immunities which are "so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Snyder v. Massachusetts,* 291 U.S. 97, 105 (1934), or are "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325 (1937). *See Rochin v. California,* 342 U.S. 165 (1952). Fundamental to the concept of due process is the principle that every person who stands accused of a crime is entitled to a fair and impartial trial. *Massey v. Moore,* 348 U.S. 105 (1954); *Betts v. Brady,* 316 U.S. 455 (1942). Our

courts long ago recognized that an essential ingredient of a fair trial is the presumption of innocence with which an accused is clothed. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895).

"The presumption of innocence," as noted by the court in *Eaddy v. People*, 115 Colo. 488, 492, 174 P.2d 717, 718 (1946), "requires the garb of innocence;" and the defendant is entitled to all the physical indicia consistent with innocence. *Kennedy v. Cardwell*, 487 F.2d 101 (6th Cir. 1973), *cert. denied*, 416 U.S. 959 (1974). Thus, from the earliest days of the common law a defendant in a criminal trial had the right to appear in court free of restraint. *State v. Roberts*, 86 N.J. Super. 159, 206 A.2d 200 (1965) (tracing the history of this rule from 1678); *see* Kranskopf, *Physical Restraint of the Defendant in the Courtroom*, 15 St. Louis U.L.J. 351 (1971). This right can be abrogated only in exceptional circumstances, such as where necessary to prevent escape, to protect those persons in the courtroom, and to maintain order during the trial. *See, e.g., Commonwealth v. Cruz*, 226 Pa. Superior Ct. 241, 311 A.2d 691 (1973); *Woodards v. Cardwell*, 430 F.2d 978 (6th Cir. 1970), *cert. denied*, 401 U.S. 911 (1971).

The rule is stated in the A.B.A. Project on Standards for Criminal Justice, Standards Relating to Trial by Jury §4.1 (c) (Approved Draft, 1968): "Defendants and witnesses should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order." The comments explain that physical bonds may create prejudice in the minds of the jury against the accused. "[T]he jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge

a dangerous man, and one not to be trusted, even under the surveillance of officers." *State v. Kring,* 64 Mo. 591, 593 (1877) *quoted in Kennedy v. Cardwell,* supra at 106. "It offends not only judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law." *Illinois v. Allen,* 397 U.S. 337, 350-51 (1970).

The case before us, involving a brief and inadvertent encounter, is distinguishable from the line of cases in which a dangerous or disruptive defendant appears throughout the trial in shackles or other physical restraint. Some courts have held that even the inadvertent sighting of a defendant in shackles for a short period of time must inevitably result in prejudice flowing to the defendant. The court in *O'Shea v. United States,* 400 F.2d 78 (1st Cir. 1968) *cert. denied,* 393 U.S. 1069 (1969) recognized that the chance observation could, if untreated, provide a source of prejudicial speculation which might infect the ultimate verdict. *See United States v. Larkin,* 417 F.2d 617 (1st Cir. 1969), *cert. denied,* 397 U.S. 1027 (1970) (court conducting voir dire after one juror observed defendant in elevator handcuffed to a marshall).

The majority of cases, however, state that the prejudice flowing from such an incident is so minor that the mistrial motion should be denied. For instance, in *United States v. Figueroa-Espinoza,* 454 F.2d 590 (9th Cir. 1972) the defendants were inadvertently brought into the courtroom in handcuffs while the jury was present. The court noted that the "incident was not an aggravated one" and refused the mistrial motion. The same result was reached in *United States v. Hopkins,* 486 F.2d 360 (9th Cir. 1973) where the defendant was seen handcuffed to a marshall. In *United States v. Hamilton,* 444 F.2d 81 (5th Cir. 1971) the court held the claim "so lacking in merit as to require no discussion," when the defendant was observed in handcuffs. The court in *United States v. Frazier,* 417 F.2d 1138 (4th Cir. 1969) *cert.*

*denied,* 397 U.S. 1013 (1970) denied the motion when a coconspirator was seen in the custody of marshalls, and in *United States v. Rickus,* 351 F. Supp. 1386 (E.D. Pa. 1972) *cert. denied,* 414 U.S. 1006 (1973), the court found that the incident was not so inherently prejudicial as to require either a mistrial or a voir dire. *See also United States v. Acosta-Garcia,* 448 F.2d 395 (9th Cir. 1971); *United States v. Leach,* 429 F.2d 956 (8th Cir. 1970), *cert. denied,* 402 U.S. 986 (1971); *McCoy v. Wainwright,* 396 F.2d 818 (5th Cir. 1968).

Due process of law, "itself a historical product," *Jackman v. Rosenbaum Co.,* 260 U.S. 22, 31 (1922), imposes upon us the duty to insure that elementary fairness toward one charged with an offense is not infringed. However, there remain competing interests and balancing forces in the administration of criminal justice. There is a line, which through a continuing process of application, marks the interests reasonably necessary to the administration of justice; and beyond which even the most unassailable individual constitutional rights cannot venture. We think the facts of this case fall behind that line.

In the case before us the defendant was not observed in the courtroom and was not observed while handcuffed.[1] If he was observed at all it was with a minimum of restraint and in the custody of two deputy sheriffs who remained in the courtroom throughout the trial without objection from trial counsel. We find that the degree of prejudice, if any, resulting from the brief incident was so minute that the trial judge could properly have determined that a voir dire only would have served to magnify a minor occurrence.

We do not indicate that a precautionary instruction or additional voir dire would not have been proper. *See,*

---

1. See *Commonwealth v. Cruz,* 226 Pa. Superior Ct. 241, 311 A.2d 691 (1973), where this Court granted a new trial when the defendant was observed in the courtroom while handcuffed.

*e.g., Commonwealth v. McGonigle*, 228 Pa. Superior Ct. 345, 323 A.2d 733 (1974) ; *Commonwealth v. DeMarco*, 225 Pa. Superior Ct. 130, 310 A.2d 341 (1973) ; *Snow v. Oklahoma*, 489 F.2d 278 (10th Cir. 1973) ; *United States v. Sperling*, 362 F. Supp. 909 (S.D.N.Y. 1973). We hold only that under the facts of this case the judge did not abuse his discretion in refusing to conduct a voir dire.

## II

Appellant's second contention is that he was denied his fundamental right to the effective assistance of counsel when he was required to proceed to trial with an unprepared attorney from the Public Defender's Office when he wished to have his own privately retained counsel prepare his defense. The record reveals that the public defender assigned to the case, Robert H. Somerton, Esquire, had represented the appellant both when he pleaded not guilty in open court and a week before the trial date when a jury was selected. It was not until the morning of trial that the appellant requested that private counsel, not Mr. Somerton, represent him. The judge recessed the court and requested that appellant's private counsel appear for a hearing. During the hearing it was determined that the counsel allegedly representing the appellant in fact had not been retained. The attorney stated only that there had been some preliminary negotiations concerning the obtaining of bail for the appellant, but that the attorney had not represented the appellant even in this matter when the appellant was unable to obtain the requested fee. The attorney stated that there had been no discussion of representing the appellant at a trial, that he had not been aware that a trial had been scheduled, and that he would not represent the appellant unless arrangements could be made for the attorney's compensation. It was upon this record, embellished by Mr. Somerton's statement that he had conferred with the appellant for 40 minutes during the re-

cess, that the judge ordered the trial to proceed with Mr. Somerton representing the appellant.

The appellant asserts that the ruling of the trial judge in forcing him to proceed with a public defender who was unprepared and unwanted abridged his right to the effective assistance of counsel. We cannot agree with this contention. Although on the morning of trial the public defender stated that he felt he was unprepared for trial, this statement was made prior to his 40 minute conference with the appellant. The rule is clear that shortness of time in the preparation of a defense or in conference with a client does not per se constitute ineffective assistance of counsel. *Commonwealth v. Owens,* 454 Pa. 268, 312 A.2d 378 (1973); *Commonwealth v. Hill,* 450 Pa. 477, 301 A.2d 587 (1973); *Commonwealth v. Skipper,* 440 Pa. 576, 271 A.2d 476 (1970). To find an abridgment of the right to effective assistance of counsel this Court must make an independent review of the record, *Commonwealth v. Bronson,* 457 Pa. 66, 321 A.2d 645 (1974); *see Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974), to determine whether an accused's rights have been adequately protected. *Commonwealth v. Pride,* 450 Pa. 557, 301 A.2d 582 (1973). "The seminal question in determining whether a defendant was denied effective assistance of counsel is whether the course chosen by defense counsel had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Hosack,* 459 Pa. 27, 33, 326 A.2d 352, 355 (1974).

The record reveals that Mr. Somerton, an able and experienced criminal lawyer, vigorously represented and protected his client. Counsel's stewardship of the case was not only "within the permissible range of prudent representation of his client's interests", *Commonwealth v. Ganss,* 440 Pa. 602, 606, 271 A.2d 224, 226 (1970), but was of a character which best exemplifies the profession. The appellant's only specific claim raised against

his counsel was that he should have produced a witness. However, appellant admitted that he did not know the address or whereabouts of the alleged witness. We find from the record that appellant's right to the effective assistance of counsel was not abridged.

Judgment affirmed.

CERCONE, J., concurs in the result.

---

DISSENTING OPINION BY SPAETH, J.:

The majority opinion suggests that defense counsel did not really ask for a voir dire of the juror. Thus the opinion states:

> [A]ppellant's counsel requested the court to conduct a voir dire of the juror .... He qualified his remark, however, by adding: "[b]ut the question is, do we do more harm than good doing that?"
>
> The court apparently responded affirmatively to counsel's rhetorical question ....

If in fact defense counsel had not asked for a voir dire, I should concur in affirming the judgment of sentence. I suggest, however, that the record demonstrates that counsel did ask for a voir dire.[1]

The colloquy occupies some 13 pages but may be summarized as follows.

Defense counsel started by describing what he had seen occur in the hall outside the courtroom. As a result, he said, there was "no question in my mind that she [the juror] saw the defendant in the custody of the sheriff, one on each side," leading to "a strong inference . . . on that juror's part that [the defendant] . . . has in fact a prior record . . . ." A deputy sheriff was then questioned briefly. He said that before appellant was taken out of the elevator, "the cuffs were taken off;" that

---

1. It is not argued by the Commonwealth in its brief, or stated by the court below in its opinion, that counsel did not ask for a voir dire.

"we did have a hand on him;" and that "we wouldn't have known her [the juror] . . . . I didn't see her myself . . . . I didn't pay any mind to it." The assistant district attorney then gave his version of what had occurred, concluding: "I think she [the juror] was in such a hurry that I don't believe she noticed anything." To this, defense counsel rejoined: "There's no way to determine her state of mind." The court thereupon said:

There's no way to determine that, but in the circumstances, we're of the same frame of mind as you are that she was in such an interest [*sic*] to get here because she was late and wanted to be on time—

At this point, defense counsel (perhaps feeling that there must be some misunderstanding, for plainly the frame of mind referred to by the court was not his frame of mind), interrupted, and asked, "Why don't we ask her?" The court thereupon continued:

—that I don't feel that she paid any mind to who was coming up the hall or whether she even recognized the defendant as coming up the hall.

The colloquy continued in an inconclusive way, and then the following was said:

*Mr. Somerton* [defense counsel]: I don't know what her state of mind was. I have no way of knowing.

*The Court*: That's what I say. You have to be practical about it. I don't feel it's appropriate in these circumstances to bring that woman in and place her under a voir dire to point the whole thing out.

*Mr. Somerton*: I'm just stating that I believe that to be the proper procedure under the circumstances. The Court has the right to rule as it will, and I have the duty, and I'm a tough defense lawyer, there's no question about it, and I'm going to be tough in this case. I have to be.

*The Court*: I'm not criticizing you. Don't get me wrong. I would think less of you if you weren't tough,

because it's your duty, but again, I say to you that you have to be a little bit practical.

*Mr. Somerton*: Well, I'm stating what happened, it's on the record. It's my duty to put it there.

*The Court*: What would you propose on your voir dire?

*Mr. Somerton*: The only thing we can do on the voir dire in this situation, and I've encountered the situation before, we bring the juror in, ask her what she saw out in the hall, if she saw the defendant in the custody of the sheriff and how she saw him in that custody. There's cases, I believe we can assume that she saw the defendant or if we can't—

*The Court*: We can't assume, to use your argument—

*Mr. Somerton*: That's correct, the only other thing we encounter there is will the voir dire do more harm than it will good, is the incident or assignation [*sic*] in the hall, does that taint the case by its reason of its happening, I don't know. The only thing that has been done in other cases is that the mistrial has been granted on the very basis of the happening of the occurrence. There have been cases where they awarded voir dire, then a mistrial if it's determined that the juror did see the defendant in the custody, which I suggest I saw the defendant in the custody of the sheriffs when she was in the hall. The question is what inference she would make therefrom. We can't say to her, "Did you make an inference that he has a prior record or is in jail?" We can't do that. We're in kind of a very ticklish situation.

I'm just making motion to the Court and asking the Court to make a ruling.

*The Court*: Well, we're refusing your motion on the basis that in the circumstances of this case as explained to the Court, we find no basis for the defense counsel's position on this as to any prejudice

whatsoever to the defendant. The mere fact he was walking up the hall with the officers and particularly in view of the fact that the officers have been sitting in the courtroom beside him or near him all during the trial of this case, had there been some incident of handcuffs or something of that sort, conceivably that could have raised some inference in the mind of the juror.

*Mr. Somerton*: There were only a handhold here, Your Honor, is that right, sheriff?

*Deputy Heasley*: True.

*Mr. Somerton*: By his arms?

*Deputy Heasley*: Yes.

*Mr. Somerton*: Thank you.

*Court*: And how was that, can you demonstrate that?

*Deputy Heasley*: Yes, it was just this type of thing. (Indicating.)

*Mr. Somerton*: One on each arm?

*Deputy Heasley*: Actually, I think only one of us had a hold. I was walking behind about a step.

*The Court*: You were behind him?

*Deputy Heasley*: Right.

*The Court*: All right, we'll refuse your motion on it.

*Mr. Somerton*: For the mistrial and for the voir dire, is that correct?

From this record I conclude: 1) that defense counsel recognized that if not carefully handled ("a very ticklish situation") the voir dire of the juror might result in an unnecessary mistrial; 2) that he also recognized, however, and pointed out to the court, that nevertheless there was no way to determine what the juror had seen, and what inferences she had drawn on the basis of what she had seen, short of a voir dire; 3) that according to what he himself had seen, the juror might well have inferred that appellant had a prior criminal record; 4)

that therefore he was insisting upon a voir dire; and 5) finally, that the court understood he was thus insisting, but even so denied the request because "in the circumstances of this case *as explained to the Court, we find no basis* for the defense counsel's position on this as to any prejudice whatsoever to the defendant." (Emphasis added.)

Consequently, the issue presented to us is not as defined by the majority, *i.e.,* "whether the inadvertent observance by a juror of a defendant being brought to the courtroom restrained only by the physical proximity of two sheriff's deputies, one of whom is grasping the arm of the defendant, per se requires the grant of a mistrial of a voir dire examination of the juror involved." The issue, rather, is whether, when defense counsel makes a proper request for voir dire, the court may deny the request without taking any testimony, and on the basis of a finding of fact the correctness of which, in the absence of voir dire, cannot be determined.

When the issue is thus understood, I suggest, it is apparent that we ought to award a new trial. By refusing to do so, we do what an appellate court should never do: we decide a case by treating as fact something the record does not show is fact. There is simply no evidence to support the majority's statement of what "the inadvertent observance" by the juror disclosed. The statements by the deputy sheriff are not evidence, for they were not given under oath. In any event, of the two deputies who had appellant in custody, only one made any statements to the court; and these were too inconclusive to permit of any confidence about what the juror really saw. The majority has done what the court below did: it has accepted as correct the assistant district attorney's opinion that the juror "was in such a hurry I don't believe she noticed anything." Who is he to say so? It is equally possible that defense counsel was correct in his interpretation of the incident. All of this uncertainty

could have been avoided if the court below had done what defense counsel requested: ask the juror what she did see. That was the only way to get the facts. Nor was there anything to be dreaded about such a procedure. While not frequent, neither is it unusual. If necessary, the juror is excused and replaced by an alternate, and the trial proceeds; if that is not possible for some reason, a mistrial is declared. The point is that whatever is done, is done on the basis of evidence.

This case is similar to *Reilly v. Poach*, 227 Pa. Superior Ct. 522, 323 A.2d 50 (1974). There a jury asked the trial judge two questions about a driver's duty in an emergency. Counsel suggested answers, but the judge, on his own and over objection by both counsel, decided not to answer either question. As a result, it could not be determined whether the jury had or had not based its verdict on a proper understanding of the emergency rule. We therefore reversed for a new trial. Here the trial judge, on his own and over counsel's objections, decided not to ask, rather than not to answer, some questions, with the same result: it cannot be determined whether the jury in reaching its verdict did or did not consider that appellant had a prior criminal record.

I therefore believe we should reverse for a new trial. HOFFMAN, J., joins in this dissenting opinion.