351 A.2d 642

COMMONWEALTH of Pennsylvania

v.

Curtis Wilbur DAVIS, Appellant
(two cases).

Supreme Court of Pennsylvania.

Argued Nov. 20, 1975 (J–445).

Decided Jan. 29, 1976.

Rehearing Denied March 1, 1976.

Frank H. Morgan, Jr., Media, for appellant.

Vram Nedurian, Jr., Asst. Dist. Atty., Media, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Curtis Wilbur Davis was arrested in December 1968 and charged with murder, voluntary and involuntary manslaughter and robbery. On September 25, 1969, appellant was found guilty, after a jury trial, of murder in the first degree, voluntary manslaughter and two counts of robbery. On appeal, this Court reversed the judgments of sentence and granted a new trial because of prejudicial remarks made by the district attorney during the trial. *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973). On remand, appellant was retried before a jury and found guilty of murder in the first degree and robbery. Judgments of sentence of life imprisonment on the murder count and ten to twenty years, to run consecutively, on the robbery count, were subsequently imposed. On this appeal,[1] appellant advances numerous challenges concerning the admissibility of certain evidence, the sufficiency of the evidence, and other errors alleged to have occurred during trial. We find none of these claims to be meritorious and affirm the judgments of sentence.

### I

### *Admissibility of Evidence*

Appellant claims that the trial court erred in refusing to suppress evidence because: (1) he was illegally arrested; (2) the search incident to his arrest was overly broad; and (3) the warrant to search his apartment was issued without a showing of probable cause.

Appellant's original arrest and the search of his apartment were made pursuant to warrants issued on Decem-

---

1. This direct appeal is brought pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975).

ber 20, 1968. At that time, he was suspected of the arm-
ed robbery of one Newsome. During a search of his
apartment following his arrest, numerous items were
found, including a weapon which linked appellant to an-
other armed robbery which resulted in a murder. On
December 23, 1968, while still in custody, appellant was
arrested for crimes arising from this second incident.
The conviction for these crimes is the subject of this
appeal.[2]

■ Appellant claims that the December 20 arrest
was illegal because the officers who executed the arrest
warrant were outside their jurisdiction. The warrant
was issued in Chester, where the robbery occurred, to
Chester City Police Officers. They arrested appellant at
his work address in the borough of Marcus Hook, located
near Chester. Appellant claims that the Act of August
6, 1963, P.L. 511, § 1 [3] requires a holding that the Ches-
ter City Police acted beyond their authority. At the time
of appellant's arrest that statute provided:

"Any police officer in the employ of a county, city,
borough, town or township may arrest, with or with-
out a warrant, any felon beyond the territorial limits
of the political subdivision employing such officer for
a felony committed by the felon within the political
subdivision employing the police officer if such officer
continues in pursuit of the felon after commission of
the felony."

However, at the time of his arrest, the Act of March 31,
1860, P.L. 427, § 3, as amended (formerly codified as 19
P.S. § 3) was still in effect. That statute read in rele-
vant part:

"In case any person against whom a warrant may be
issued by any judge or alderman of any city, or justice

2. The robbery which led to appellant's original arrest is not a
 subject of this appeal.
3. This statute has been amended since appellant's arrest. See 19
 Pa.C.S. § 11 (Supp.1975).

of the peace of any county in this commonwealth, for any offense there committed, shall escape, go into, reside, or be in any other city or county out of the jurisdiction of the judge, alderman, or justice of the city or county granting such warrant as aforesaid, it shall and may be lawful for the person to whom such warrant was originally directed, or the person having such warrant for execution, to execute the same, and arrest such offender in such city or county, out of the jurisdiction of the alderman, justice or justices granting such warrant . . . ."

The Chester City Police were acting within their authority when they arrested appellant.[4]

Appellant claims that the arresting officers acted illegally by seizing his apartment key incident to the arrest. He apparently believes that, because the key was not mentioned in the search warrants of his apartment, the officers were required to return the key and obtain another search warrant.

4. Appellant claims that the Legislature "impliedly repealed" the Act of March 31, 1860, P.L. 427, § 3, as amended (formerly codified as 19 P.S. § 3) (hereinafter "section 3") when it enacted the Act of August 6, 1963, P.L. 511 § 1 (see 19 Pa.C.S. § 11 (Supp. 1975)) (hereinafter "section 11"). Such a result would be compelled either if the two statutes were "irreconcilable" or if section 11 were a revision of all statutes upon the particular matter. See 1 Pa.C.S. §§ 1936, 1971 (Supp.1975). Neither of these possibilities exist here. Although section 11 covers pursuit and arrest of felons with or without a warrant, it does not exclude alternative authorizations for arrest. Thus it does not purport to be a complete revision of the subject matter. Further, contrary to appellant's assertion, section 11 does not limit an arresting officer's jurisdiction to "hot" pursuit of felons. Consequently, section 11 does not necessarily conflict with section 3 and should be interpreted to specifically include the authorization for arrest with a warrant found in section 3. See 1 Pa.C.S. § 1932 (Supp.1975). It should be noted that section 3 was suspended by this Court because it conflicted with Pa.R.Crim.P. 323 (adopted since the arrest here) and not because of any conflict between section 3 and section 11.

We do not determine whether section 11, standing without section 3, would authorize the action taken here. We also do not determine the remedy to be applied if arresting officers act outside their jurisdiction.

 This claim is wholly without merit. The officers had authority to search the area within appellant's immediate control incident to the arrest. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ; *Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974) ; *Commonwealth v. Brayboy*, 431 Pa. 365, 246 A.2d 675 (1968). There is no allegation that the key was not within appellant's immediate control. Since the search was valid, the officers could seize "evidence which would aid in apprehending and convicting criminals." *Warden v. Hayden*, 387 U.S. 294, 306, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967); see *Commonwealth v. Bundy*, supra. Appellant admits that, under this definition, the key was a seizable item; in fact, the key was used at trial to show that he resided in the apartment where the weapon was found.[5]

 Finally, appellant asserts that the search warrants for his apartment and the arrest warrant were issued illegally. Prior to the issuance of a warrant, information must be presented to the magistrate which is sufficient to persuade a reasonable person that probable cause exists to conduct a search. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ; *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582, cert. denied, 18 Crim.L.Reptr. 4089 (Dec. 3, 1975); *Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970). The same standard of probable cause must be met for the issuance of an arrest warrant. *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973). When, as here, probable cause is based on infor-

---

**5.** Appellant asserts that the officers acted illegally when they used this key to enter his apartment. However, he fails to state what prejudice resulted from this action since the officers had already secured a warrant to enter the premises.

mation received from an informant, two requirements must be met:

> "First, in order to assure that the 'tip' is not merely an unsupported rumor, the officer must know the underlying circumstances from which the informer concluded that the suspect possessed the fruits or evidence of a crime. Second, in order to reduce the possibility that a 'tip' meeting the first standard is merely a well-constructed fabrication, the officer must have some reasonable basis for concluding that the source of the 'tip' was reliable. *Spinelli v. United States,* 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–90, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114–15, 84 S. Ct. 1509, 1514, 12 L.Ed.2d 723 (1964) ; *Commonwealth v. Matthews,* 446 Pa. 65, 70, 285 A.2d 510, 512 (1971)."

*Commonwealth v. Milliken,* supra at 313, 300 A.2d at 80.

■■ The following evidence was presented by the police to the magistrate to justify issuance of the warrant: Newsome, the victim of the first robbery, gave a physical description of his assailant which also described appellant and identified appellant as the assailant from police photographs; Newsome described the getaway car as having blue-green color with a wide white stripe on both sides, and the police determined that appellant owned and operated a car which fit this description; Newsome stated that this assailant used a hooded jacket and a .32 caliber revolver; police determined that appellant had two separate residences. Although Newsome did not testify, he signed the affidavit for arrest and was present at the hearing. On the basis of this information, the magistrate issued four search warrants for the hooded jacket and the .32 caliber revolver, for each of appel-

lant's two residences and for each of two cars under his control and an arrest warrant.[6]

These facts are sufficient to meet the standard for the issuance of a search or arrest warrant. The magistrate was informed of the robbery, of appellant's probable participation, and of the instrumentalities used. He could reasonably conclude that the tip was not a "rumor" and that the perpetrator would possess evidence of the crime. He could conclude that the tip was reliable because the informant, who was the victim of the crime, was the eyewitness and positively identified appellant. See *Commonwealth v. Kenney*, 449 Pa. 562, 297 A.2d 794 (1972).

Appellant argues that the police were conducting a "fishing expedition" because they sought to search two apartments and two cars. However, the magistrate was justified in issuing four warrants since he was presented with evidence that appellant resided in both apartments and had access to both cars. Appellant also asserts that probable cause does not exist because, at the suppression hearing, an arresting officer gave conflicting testimony concerning the color of the jacket and hood. This claim

---

**6.** The affidavit for the search warrant provided, inter alia:

"Information has been received from John Newsome which I believe to be true that Curtis Davis did commit the holdup with a revolver believed to be a .32 caliber."

The affidavit for the arrest warrant provided that Curtis Davis on December 11, 1968, at Concord and Tilghman Streets in Chester "did rob John Newsome and did steal property from the person of John Newsome . . . ."

Appellant asserts that the existence of probable cause must be determined from these documents alone and that the oral testimony relied on by the magistrate should be ignored. Pa.R.Crim.P. 2003(a), adopted after appellant's arrest, mandates such a procedure, but the rule is not constitutionally required and is applied prospectively only. *Commonwealth v. Conner*, 452 Pa. 333, 305 A.2d 341 (1973); *Commonwealth v. Jones*, 452 Pa. 299, 304 A.2d 684 (1973); *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973). We therefore need not determine whether these affidavits, standing alone, would be sufficient to support a finding of probable cause.

is meritless. The warrant itself defined with sufficient particularity the items to be seized.

The suppression court properly denied appellant's motion to suppress evidence.

## II

### Sufficiency of the Evidence

There were two eyewitnesses to the crime. One, the victim's daughter, stated that the assailant resembled appellant in age, color and size but was unable to identify appellant as the killer. The other, a customer in the store where the murder took place, positively identified appellant at trial. In addition, the Commonwealth presented the murder weapon and the hood and jacket which were used during the robbery. These items were found in the apartment where appellant resided with another person. There was sufficient evidence to support an inference that appellant had placed the incriminating evidence in his apartment after the robbery.

The test for determining whether the evidence is sufficient to support a conviction is:

"[W]hether, viewing the evidence in the light most favorable to the Commonwealth and drawing all proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt."

*Commonwealth v. Robson,* 461 Pa. 615, 625, 337 A.2d 573, 578 (1975); see *Commonwealth v. Rose,* 463 Pa. 264, 266, 344 A.2d 824, 825 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 608, 334 A.2d 255, 257 (1975); *Commonwealth v. McFadden,* 448 Pa. 277, 281, 292 A.2d 324, 326 (1972); *Commonwealth v. Young,* 446 Pa. 122, 123, 285 A.2d 499, 500 (1971). The evidence here meets this test. The jury could conclude, based on circumstan-

tial evidence and identification testimony, that appellant perpetrated the robbery and shot the victim during that robbery. This constitutes murder in the first degree.

Appellant argues that the trial court erred because it neither struck the testimony of the eyewitness nor instructed the jury to disbelieve his testimony.[7] On cross-examination that witness stated that he was unable to identify appellant at a lineup after the robbery and made contradictory statements concerning details of the crime.

This Court has repeatedly held that it is within the sole province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Rose,* supra at 268, 344 A.2d at 826; *Commonwealth v. Robson,* supra at 627, 337 A.2d at 579; *Commonwealth v. Murray,* supra at 609, 334 A.2d at 257; *Commonwealth v. Smith,* 457 Pa. 638, 641, 326 A.2d 60, 61 (1974); *Commonwealth v. Paquette,* 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972). Here, the jury chose to believe the Commonwealth witness. The fact that he was unable to identify appellant at the lineup is relevant to only the weight and credibility of his testimony. *Commonwealth v. Tate,* 229 Pa.Super. 202, 323 A.2d 188 (1974); see *Commonwealth v. Jennings,* 446 Pa. 294, 285 A.2d 143 (1971). The trial court carefully instructed the jury concerning the credibility of eyewitness identification, and no exceptions were taken to that portion of the charge. In these circumstances, we find no basis for disturbing the jury's determination.

---

**7.** Appellant, in a related claim, asserts that the court improperly curtailed his cross-examination of this witness. The record shows that the witness and appellant's counsel engaged in an argumentative exchange. The court properly attempted to control such conduct but did not limit the substantive scope of the cross-examination.

## III

### *Alleged Trial Errors*

██ Appellant claims that the district attorney's conduct at the suppression hearing and at trial was so prejudicial that he is entitled to a new trial. The record does not support this contention. To the contrary, the alleged errors relied on by appellant were not significant, and the precautionary measures taken by the court to avoid any prejudice were adequate remedies.[8]

██ Appellant asserts that the court committed a series of prejudicial errors which require reversal of the judgment of sentence. We disagree. The record disclos-

---

8. Appellant relies on the following prosecutorial conduct: alleged leading questions at the suppression hearing and at trial; comments made at side bar; and comments made during defense cross-examination of a prosecution witness concerning whether the witness had previously answered the defense's question. The court sustained many of appellant's objections. Assuming that the court may have erred in refusing to sustain some of appellant's objections, no prejudice occurred.

Appellant alleges that the Commonwealth's cross-examination of two defense witnesses was improper. Appellant's brother testified on appellant's behalf. The district attorney asked him why he had not come to the police sooner with his story. He also attempted to explore matters beyond the scope of direct examination. Objections to these questions were sustained. Appellant also alleges that certain other questions of this witness created an inference in the minds of the jury that defendant was incarcerated prior to trial. The witness testified that appellant had a moustache prior to the date the crimes were committed and until the date of trial. The district attorney, in an effort to impeach this testimony, attempted to show a picture of appellant without a moustache taken while appellant was in jail. The court sustained an objection made at sidebar.

Another of appellant's brothers also testified on appellant's behalf. The district attorney inquired when he was first asked to testify. Appellant objected because he had chosen to present no evidence at the first trial. The court cautioned the Commonwealth to limit its questioning. The district attorney also questioned this witness about appellant's activities at the time of arrest. The witness stated that appellant came into the witness' bar quite often and had been there on December 19, 1968. The Commonwealth then asked when the next visit occurred. Appellant's objection was sustained because of the danger that the witness might testify that appellant had been arrested the following day. The jury was instructed to ignore the question.

es that the court did not abuse its discretion in any of the rulings challenged by appellant.[9]

Appellant also argues that prejudicial error occurred because jurors saw him handcuffed when he was in the hall outside the courtroom. The record discloses that on two occasions during voir dire appellant was handcuffed in the hall at times when jurors could have seen him.

**9.** Appellant relies on the following: (1) A box containing Commonwealth exhibits marked "Curtis Davis, homicide" was brought into the courtroom. When appellant objected, the lettering was covered. (2) A Commonwealth witness was allowed to testify that the physical characteristics of the assailant five years before were similar to appellant's at the time of trial. The court asked the same witness whether she took into account the passing of time. No prejudice occurred since the court's question alerted the jury to the uncertainty of the identification testimony. (3) A doctor who had conducted over 5,000 autopsies was allowed to testify on the cause of death. Appellant, on cross-examination, challenged the witness' conclusions. Appellant's objection to the doctor's qualifications as an expert was properly overruled. The qualification of expert witnesses is a matter within the sound discretion of the trial court. *Commonwealth v. Cavalier,* 284 Pa. 311, 131 A. 229 (1925); *Commonwealth v. Ametrane,* 205 Pa.Super. 567, 210 A.2d 902 (1965), aff'd. 422 Pa. 83, 221 A.2d 296 (1966); *McCormick on Evidence* § 13 (1972). Nothing in this record supports an abuse of discretion. The credibility of the witness was for the jury to determine. (4) Appellant argues that the court improperly admitted into evidence certain exhibits. The record shows that the exhibits were properly identified and admitted. (5) Certain inflammatory pictures were held inadmissible by the court. Appellant claims that these pictures were visible to the jury when the district attorney placed them on the court stenographer's desk. The court, to ensure that no prejudice occurred, had the pictures turned over by the stenographer. The record does not support any inference that the pictures were seen by the jury. (6) Appellant argues that comments made by the court at sidebar prejudiced his case. This claim is frivolous. (7) A detective, on cross-examination, was questioned concerning the chain of custody of the fatal bullet. Appellant claims that the court prejudiced his case by referring to earlier testimony involving this issue. This reference did not create any prejudice. (8) Finally, appellant asserts that the court erred in its charge to the jury by the "constant repetition" of first degree murder by comparison to its references to other degrees of murder. This claim is meritless, and, in any event, was waived because no objection was interposed and no clarifying instruction was requested. Pa. R.Crim.P. 1119(b); *Commonwealth v. McNeil,* 461 Pa. 709, 337 A. 2d 840 (1975); *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1973); *Commonwealth v. Watlington,* 452 Pa. 524, 306 A.2d 892 (1973).

■■■■■ An essential element of a fair trial is the presumption of a defendant's innocence. *United States v. Fleischman,* 339 U.S. 349, 363, 70 S.Ct. 739, 746, 94 L.Ed. 906 (1950); *Commonwealth v. Bonomo,* 396 Pa. 222, 229, 151 A.2d 441, 445 (1959). Thus, a defendant should be allowed to wear the garb of innocence and should not, absent exceptional circumstances, be physically restrained while before the jury. *Commonwealth v. Mayhugh,* 233 Pa.Super. 24, 336 A.2d 379 (1975); *Commonwealth v. Cruz,* 226 Pa.Super. 241, 311 A.2d 691 (1973); *Kennedy v. Cardwell,* 487 F.2d 101 (6th Cir. 1973); *Way v. United States,* 285 F.2d 253 (10th Cir. 1960). As stated in the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury § 4.1(c) (Approved Draft 1968):

> "Defendants . . . should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. . . ."

Cf. *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L. Ed.2d 353 (1970).

■■■■ However, appellant here has not established that the two incidents he complains of created sufficient prejudice to warrant a grant of a mistrial. At a hearing on this issue, he offered no testimony to indicate that a juror at the trial did in fact see him. Nor did he request the court to question the jury concerning the incident or to give any form of cautionay instruction. The court specifically stated that it would give such an instruction if appellant so requested and that it would take every precaution to ensure that appellant was not seen by the jury while handcuffed. Because the record is devoid of a showing of prejudice and because appellant did not request, despite the court's explicit offer, either a voir dire examination or cautionary instructions, we hold that the court acted properly in refusing appellant's request for a mistrial. See *Commonwealth v. Evans,* 465 Pa. 12, 348

A.2d 92 (1975); *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680, appeal dismissed, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974).

 Finally, appellant contends that, assuming no single assignment of error compels a new trial, the asserted errors collectively require reversal. We disagree. In *Commonwealth v. Martinolich*, supra, this Court was confronted with a similar claim. We stated:

> " 'Although a perfectly conducted trial is indeed the ideal objective of our judicial process, the defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. "A defendant is entitled to a fair trial but not a perfect one." ' *Commonwealth v. Hill*, 450 Pa. 477, 480–81, 301 A.2d 587, 590 (1973) (quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953))."

> "Our review of the record satisfies us that [the trial court] properly exercised [its] judicial responsibility and that appellant was afforded a fair and just trial. By explanation, admonition, and instruction during the course of trial and in his charge, the trial judge kept from the jury's consideration irrelevant issues, impermissible comments, and appeals to prejudice. . . . Yet, his conduct of the trial gave the jury the required latitude to decide appellant's guilt or innocence solely on the evidence properly before it."

Id. 456 Pa. at 162–63, 318 A.2d at 695 (footnotes omitted).

Here, as in *Martinolich*, appellant was accorded a fair and just trial.

Judgments of sentence affirmed.

JONES, C. J., did not participate in the consideration or decision of this case.

NIX and MANDERINO, JJ., concur in the result.