699 A.2d 710

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Samuel ENGLISH, Appellant.**

Supreme Court of Pennsylvania.

Argued April 28, 1997.

Decided July 23, 1997.

Jeffrey J. Crossland, Lewisburg, for Samuel English.

Anthony Rosini, Sunbury, William C. Cole, Philadelphia, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NIGRO, Justice.

Appellant Samuel English appeals from the Superior Court's reversal of the trial court's grant of a new trial and its

affirmance of the trial court's denial of his motion for arrest of judgment. For the reasons presented herein, we affirm.

On March 8, 1991, Appellant was present at the residence of Sabrina Miller, with whom he had fathered a son, two month old Ryan Miller. Ms. Miller's estranged husband, Stephen Miller, was the father of her first child, Stephen Jr. Mr. Miller had arranged earlier that day to pick up Stephen Jr. at 7:00 p.m. for visitation. Hoping to avoid any conflict between her husband and Appellant, Ms. Miller asked Appellant to leave the premises until after Mr. Miller had departed. Appellant agreed and occupied himself at a local bar until 8:00 p.m. While at the bar, he consumed three to five beers and some whiskey. He then purchased two six-packs of beer and returned to Ms. Miller's residence. He ate dinner with Ms. Miller and spent the evening watching television. During this time, Ryan slept on one of the couch cushions over which Ms. Miller had wrapped two blankets.

At 3:00 a.m., Ryan's crying awakened Ms. Miller. She changed and fed the child, and the two watched television and played until 5:00 a.m., when they fell asleep on a reclining chair with Ms. Miller holding the child in her arms. At some point during the next several hours, she felt Ryan being lifted off of her.

At 8:00 a.m., Ms. Miller was awakened by a phone call. As she answered the phone, she observed Appellant sleeping face down on the couch with his head at the left end and his body extended so that his lower legs were lying across Ryan's blankets at the right end of the couch and his feet were hanging over the right armrest. After learning that the call was for Appellant, she woke him up and inquired as to Ryan's whereabouts. Appellant indicated that the child was on the couch, but Ms. Miller did not see him until she raised one of the blankets at the right end of the couch. She then found Ryan lying face down and not breathing.

An ambulance was summoned. Although cardiopulmonary resuscitation was performed at the site and on the way to the

hospital, the child did not respond and was pronounced dead after emergency room treatment failed as well.

After a police investigation, Appellant was charged with involuntary manslaughter. *See* 18 Pa.C.S. § 2504(a) (Supp. 1997).[1] Trial ensued, and Appellant was convicted by a jury. However, after post-trial motions had been filed, the trial court ordered a new trial based on its conclusion that the cumulative effect of two alleged errors during the proceedings had prejudiced Appellant and that a new trial was warranted in "the interests of justice." Trial Ct. Order, 8/22/94, at 3 n. 1. Appellant's request for an arrest of judgment was denied.

Cross-appeals were filed challenging the trial court's order. The Superior Court examined the two alleged errors Appellant complained of and concluded that both had been waived. Accordingly, the Superior Court reversed the lower court's grant of a new trial, finding no merit to the determination that the cumulative effect of these errors warranted a new trial.[2] The denial of Appellant's arrest of judgment motion was affirmed and the case was remanded for reinstatement of the verdict and sentencing.

We granted allocatur to determine whether the Superior Court erred in reversing the trial court's grant of a new trial in "the interests of justice" due to the cumulative effect of the two errors Appellant identifies.

The first of these errors centers on the testimony of Dr. Wayne Ross, the forensic pathologist who performed the autopsy on Ryan Miller. On direct examination, Dr. Ross testified that the child had died of cardiopulmonary arrest due to complications of asphyxia. *See* N.T. at 153. The asphyxia was caused by a combination of chest compression and suffo-

---

1. Section 2504 states, in pertinent part:
   (a) **General rule.**—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person. 18 Pa.C.S. § 2504(a) (Supp.1997).

2. Judge Johnson dissented based on his conclusion that the trial court had not abused its discretion in granting a new trial.

cation. *See id.* at 168. Further, Dr. Ross opined that the nature and position of certain marks on the child's face indicated to him that the child had died while lying on its stomach, with a weight across its back and head such that the child's mouth was pressed into a couch cushion near one edge and its nose, which was extended just over the edge of the cushion, was forced into the side of the cushion. *See id.* at 165–69.

Just after this, the Commonwealth asked Dr. Ross if a two month old child would be able, on its own, to maneuver his head into a position similar to the one Ross believed Ryan Miller had died in. Defense counsel objected, arguing that this was beyond Dr. Ross's expertise. The objection was overruled, and Ross stated his belief that it was "extremely unlikely" that a two month old infant would be able, on its own, to move his head into the position in question. *Id.* at 173. The Commonwealth then asked Dr. Ross if, in his opinion, there would have to have been some "outside force" applied to the child's body to create the facial marks he had described. After Ross answered in the affirmative, defense counsel again objected, arguing that the Commonwealth's questions were beyond the scope of the involuntary manslaughter charge because they suggested that someone had intentionally put the child's face between two of the couch cushions. This objection was overruled. *See id.* at 174–78.

Later, during cross-examination, Dr. Ross stated that in his opinion "somebody ... probably put their hand over the [child's] back, put their hands on the back of the head, not in front of the face, and took the face and put it between the two cushions, and in that way suffocated [the child by] compressing the nose down in between and on one of the cushions." *Id.* at 187. The Commonwealth then objected, arguing that Appellant was not indicted for an intentional killing, but that Ross's statements on cross-examination were suggesting that conclusion. The trial court overruled the objection, concluding that the defense should be permitted to explore the area to rebut the testimony brought out on direct exam. *See id.* at 189. The defense then asked Dr. Ross if he thought someone

intentionally killed the child. Ross answered in the affirmative and stated that he believed that that was the case even though he knew Appellant had only been charged with involuntary manslaughter. *See id.* at 190.

At the close of Ross's testimony, the defense requested that the testimony be stricken and that the jury be instructed to disregard it. The trial court granted this request, indicating that the jury would be instructed not to consider Dr. Ross's opinion that the child's death was the result of an intentional act. *See id.* at 221–22.[3]

Defense counsel also requested a mistrial, arguing that the jury's exposure to Dr. Ross's testimony was unduly prejudicial. However, after a recess during which counsel conferred with Appellant at the court's suggestion, Appellant indicated on the record that he was withdrawing the motion for mistrial. *See id.* at 223–25. Despite this, Appellant raised the issue in post-trial motions, alleging prosecutorial misconduct and/or trial court error in allowing the jury to hear the complained-of statements by Dr. Ross.

The second error identified by Appellant concerns a conversation overheard by Sabrina Miller during a court recess. Ms. Miller heard two women outside the courtroom engage in a discussion concerning a prior case Appellant had been involved in: "one lady had said that she recognized [Appellant] from being in the paper with his charge that he's serving for now. And the other woman had said that, yes, she was just thinking about that." *Id.* at 231.

The matter was brought to the trial court's attention the following day, just after closing arguments. During an in-chambers inquiry with prosecution and defense counsel present, Ms. Miller could provide no further information on the content of the conversation she had heard or on the women who were speaking. Although she "assumed" that the women were jurors, she was not positive. She stated that it was

3. In the trial court's jury charge, the jurors were instructed to disregard the statements of Dr. Ross concerning an intentional killing, *see* N.T. at 248, 252–53, and the definition of involuntary manslaughter was clearly presented, *see* N.T. at 256–58.

"possible" that the women were simply observers in the courtroom. She could not recall whether either one was wearing a juror identification badge and she did not believe she would be able to identify either woman. *See id.* at 232–35.

The trial court offered to allow the defendant to voir dire the jury concerning the conversation and the jurors' knowledge of it. After conferring with counsel, and despite the court's indication that the matter would be waived if not addressed at that point, Appellant indicated with certainty that he wished to proceed "as is." *Id.* at 243–45. Accordingly, the jury was not questioned, and the trial moved on. After his conviction, however, Appellant raised the issue in post-trial motions, where he alleged prosecutorial misconduct and claimed that the prosecution learned of the conversation the day before it was revealed to the trial court and to defense counsel.

Although the trial court recognized that neither of the two alleged errors Appellant identified, considered alone, compromised the integrity of the trial, the court believed that their "cumulative effect" compelled the grant of a new trial in "the interests of justice." Trial Ct. Order, 8/22/94, at 1 n. 1, 3 n. 1. Appellant argues that the trial court's action did not constitute an abuse of discretion. Given the facts of this case, we disagree.

In *Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240 (1991), this Court stated that when "a trial court determines that the process has been unfair or prejudicial, even where the prejudice arises from actions of the court, it may, in the exercise of its discretionary powers, grant a new trial 'in the interest of justice.'" *Powell,* 527 Pa. at 294, 590 A.2d at 1243. However,

[w]hile the scope of a trial court's discretionary powers to deal with the factual circumstances it confronts is broad, it is not unlimited. It necessarily follows that the requirement that appellate courts defer to that exercise of discretion is not without limitation either. The propriety of such an exercise of discretion may be assessed by the appellate

process when it is apparent there was an abuse of that discretion.

*Powell,* 527 Pa. at 297, 590 A.2d at 1244 (citing *Bellettiere v. Philadelphia,* 367 Pa. 638, 642, 81 A.2d 857, 858 (1951)).

■ In the instant case, the trial court's grant of a new trial constituted an abuse of discretion. Regarding the testimony of Dr. Ross, it should be noted that the statements made on direct examination were not inconsistent with a charge of involuntary manslaughter; the trial court expressly recognized this. *See* N.T. at 177–78. It was only on cross-examination that Dr. Ross offered his opinion that Ryan Miller died as the result of an intentional act. *See id.* at 187, 190. In any event, it is clear that upon defense counsel's request, the trial court struck from the record the complained-of statements by Dr. Ross and instructed the jury to disregard them. *See id.* at 252–53. It is well-established that juries are presumed to follow the trial court's instructions. *See Commonwealth v. Bronshtein,* 547 Pa. 460, 479 n. 16, 691 A.2d 907, 916 n. 16 (1997); *Commonwealth v. Jones,* 542 Pa. 464, 490–91, 668 A.2d 491, 503–04 (1996) (citing *Commonwealth v. Baker,* 531 Pa. 541, 559, 614 A.2d 663, 672 (1992)). Thus, any prejudice to Appellant stemming from Dr. Ross's testimony was cured by the trial court's instructions.[4] We note that the trial court itself recognized this. *See* Trial Ct. Order, 8/22/94, at 1 n. 1.

Appellant, however, argues that a new trial is warranted because he was faced with an unfair "Hobson's choice" regarding his mistrial motion. Specifically, he claims that, if he had not withdrawn the motion and if it had been granted, he faced the possibility that the Commonwealth would choose to retry him for first-degree murder, not involuntary manslaughter. He then claims that the remaining option, which he took, was to withdraw the motion and proceed to verdict with a jury that was prejudiced against him because of Dr. Ross's statements. Appellant claims that the unfairness of this choice warrants the grant of a new trial.

4. At no point has Appellant alleged or argued that the trial court's instruction to the jury was in any way inadequate.

Appellant's argument is flawed. As noted above, the complained-of statements by Dr. Ross were stricken from the record and the jury was instructed to disregard them. The court's instructions removed the statements from the jury's consideration, which in this case cured any prejudice that might have been present. *See, e.g., Bronshtein; Jones.* Consequently, Appellant's "Hobson's choice" did not exist because the withdrawal of the mistrial motion did not saddle him with a biased jury. On the contrary, by withdrawing his motion, Appellant received the best possible outcome given the circumstances: he avoided the possibility of retrial on murder charges and also reaped the benefit of the trial court's cautionary instruction to the jury. Accordingly, a new trial was not warranted in this case.

█ Consideration of the jury taint issue regarding the conversation overheard by Sabrina Miller does not compel a different result.[5] Before the Superior Court, Appellant framed the issue as prosecutorial misconduct, alleging that the prosecution knew of the conversation but did not make it known to the trial court or the defense "until almost 24 hours later, and after closing arguments." *Commonwealth v. English,* 446 Pa.Super. 569, 575, 667 A.2d 1123, 1126 (1995) (quoting Appellant's Superior Court Brief). After reviewing the record in this case, we find no evidence that the prosecution engaged in any misconduct or intentionally withheld information in order to provoke a mistrial. *See, e.g., Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992)

5. Before this Court, Appellant alludes to this issue in his "Statement of the Question Involved," but then presents no argument on the point. His brief is focused solely on the mistrial claim surrounding Dr. Ross's testimony. This is a sufficient basis to find the claim of jury taint waived. *See Commonwealth v. Ragan,* 538 Pa. 2, 37, 645 A.2d 811, 828–29 (1994); *Commonwealth v. Shaw,* 494 Pa. 364, 370 n. 3, 431 A.2d 897, 900 n. 3 (1981) (failure to elaborate upon a mere assertion results in waiver).

However, we granted allocatur to determine whether the trial court abused its discretion in granting Appellant a new trial. Because the jury taint issue formed part of the basis for the trial court's decision, we will consider it herein.

(defendant discharged after intentional prosecutorial misconduct denied him a fair trial, retrial barred by double jeopardy).

We also note that it is, at best, inconclusive whether the two women whose conversation was overheard were, in fact, jurors. The entire claim is based on an assumption by Sabrina Miller. Ms. Miller could not positively identify the women as jurors, she simply "assumed" that they were. She then established the unreliability of this assumption by acknowledging that the women might have been nothing more than observers in the courtroom. Given this, any conclusion that Appellant's claim of jury taint warrants the grant of a new trial would require this Court to engage in speculation. We decline to do so.[6]

As noted above, the trial court correctly concluded that neither of the two errors Appellant points to were, alone, sufficient to warrant the grant of a new trial. *See* Trial Ct. Order, 8/22/94, at 1 n. 1. Rather, the court's action was explicitly based on the combined effect of these two errors. Having now determined that the alleged error regarding Appellant's motion for mistrial simply was not error, and having concluded that the jury taint issue is without merit, we find the trial court's "cumulative effect" reasoning untenable.[7]

6. "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." *Holt v. United States*, 218 U.S. 245, 251, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910) ((Holmes, J., writing for the Court), *quoted in Commonwealth v. Maloney*, 409 Pa.Super. 516, 528, 598 A.2d 543, 548–49 (1991), *appeal denied*, 529 Pa. 668, 605 A.2d 333 (1992)).

7. Similar to Appellant herein, the defendant in *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976) claimed that even if none of the alleged errors in his case, taken individually, compelled a new trial, the collective effect of the errors did warrant a new trial. In rejecting that claim, this Court stated:

[a]lthough a perfectly conducted trial is indeed the ideal objective of our judicial process, the defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. 'A defendant is entitled to a fair trial but not a perfect one.' *Commonwealth v. Hill*, 450 Pa. 477, 480–81, 301 A.2d 587, 590 (1973) (quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)).

Accordingly, on the facts of this case, we believe the trial court abused its discretion by granting Appellant a new trial. *See Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240 (1991). The decision of the Superior Court is therefore affirmed, and the case is remanded to the trial court for reinstatement of the verdict and imposition of sentence. Jurisdiction relinquished.

ZAPPALA and CAPPY, JJ., concur in the result.

*Davis,* 466 Pa. at 117, 351 A.2d at 649 (quoting *Commonwealth v. Martinolich,* 456 Pa. 136, 162–63, 318 A.2d 680, 695, *cert. denied,* 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974)) (footnote omitted); *see also Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *Commonwealth v. Rashed,* 496 Pa. 26, 35, 436 A.2d 134, 139 (1981). We find these words equally applicable in the instant case.