J-S67003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN BROWN-CAMP | : | |
| | : | |
| Appellant | : | No. 2773 EDA 2017 |

Appeal from the Judgment of Sentence August 2, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003503-2015

BEFORE: OTT, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 24, 2019**

Bryan Brown-Camp appeals from the judgment of sentence imposed August 2, 2017, in the Philadelphia County Court of Common Pleas. The trial court sentenced Brown-Camp to an aggregate term of 22½ to 45 years' imprisonment following his conviction of third-degree murder and criminal conspiracy to commit robbery, for his role in the April 22, 2013, shooting death of Tevan Patrick. On appeal, Brown-Camp challenges the weight of the evidence supporting his conviction, the discretionary aspects of his sentence, the trial court's denial of a motion for mistrial, and three evidentiary rulings. For the reasons below, we affirm.

The facts underlying Brown-Camp's arrest and conviction are well known to the parties, and aptly summarized in the trial court's opinion. *See* Trial Court Opinion, 1/16/2018, at 3-10. Accordingly, we need not reiterate them herein. In summary, Brown-Camp and co-defendant Maurice Smith, lured the

_____

\* Retired Senior Judge assigned to the Superior Court.

victim into their car to ostensibly commit a robbery, but later killed him. The Commonwealth's case was based on circumstantial evidence that Brown-Camp and Smith were with the victim at the time of his death. Brown-Camp was charged with murder, robbery, criminal conspiracy to commit murder and robbery, possession of a firearm without a license, possession of a firearm on a public street in Philadelphia, and possession of an instrument of crime.[1] Following a jury trial, Brown-Camp was convicted of third-degree murder and conspiracy to commit robbery. The jury found him not guilty of the remaining charges.

On August 2, 2017, the trial court sentenced Brown-Camp to a term of 20 to 40 years' imprisonment for third-degree murder and a consecutive term of two and one-half to five years' imprisonment for conspiracy. On August 7, 2017, Brown-Camp filed a timely post-sentence motion seeking reconsideration of his sentence and challenging the sufficiency and weight of the evidence supporting his convictions. However, before the court ruled on the post-sentence motion, Brown-Camp filed a notice of appeal on August 29,

---

[1] **See** 18 Pa.C.S. §§ 2502, 3701(a)(1)(i), 903, 6106(a)(1), 6108, and 907, respectively.

2017.[2]  Thereafter, on December 6, 2017, his post-sentence motion was denied by operation of law.[3]

Brown-Camp's first issue on appeal challenges the weight of the evidence supporting his convictions.  He argues there "were no eyewitnesses or direct evidence linking [him] with the murder or the other charges."  Brown-Camp's Brief at 15.  Rather, Brown-Camp insists the Commonwealth "presented a series of unsavory witnesses, who were not credible an[d]/or had a reason to present evidence that was favorable to the Commonwealth." *Id.* at 18.  Moreover, he contends the evidence derived from his, the victim's and the co-defendant's cell phone records, particularly the locations where messages were sent/received, was "inherently unreliable."  *Id.* at 19.

_____

[2] On September 18, 2017, the trial court ordered Brown-Camp to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Brown-Camp complied with the court's directive, and filed a concise statement on October 17, 2017.  Although it does not appear in the certified record, a time-stamped copy of the concise statement is appended to Brown-Camp's brief, and the trial court refers to and quotes from the statement in its opinion. *See* Brown-Camp's Brief, Appendix; Trial Court Opinion, 1/16/2018, at 1-3.

[3] We note Brown-Camp's notice of appeal was filed prematurely, before the court had ruled upon his post-sentence motion or when it was denied by operation of law.  Nevertheless, pursuant to Pa.R.A.P. 905(a)(5), "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."  Accordingly, we will consider Brown-Camp's appeal to have been filed on December 6, 2017, the day his post-sentence motion was denied by operation of law.

Our review of a challenge to the weight of the evidence supporting the verdict is well-settled:[4]

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted), *appeal denied*, 168 A.3d 1237 (Pa. 2017).

Here, the trial court reviewed the evidence presented by the Commonwealth at trial and concluded there was "overwhelming circumstantial evidence that [Brown-Camp] lured the decedent, his childhood friend, from the state of Delaware to Southwest Philadelphia to set him up for a robbery, which culminated in his murder." Trial Court Opinion, 1/16/2018, at 11. **See**

**id.** at 12-13 (reviewing testimony that: (1) Brown-Camp asked his girlfriend, the victim's cousin, for the victim's new cell phone number on the afternoon

---

[4] Brown-Camp properly preserved his weight claim in a post-sentence motion. **See** Pa.R.Crim.P. 607(A)(3).

- 4 -

of the murder; (2) both she and the co-defendant's girlfriend placed Brown-Camp and the co-defendant in a grey four-door sedan that day; (3) the victim was last seen entering a silver four-door sedan; (4) Brown-Camp's cousin testified that he admitted to her he "set up" the victim; (5) another witness saw Brown-Camp and the co-defendant with a .22 caliber bullet, the same type that killed the victim; and (6) the triangulation of cell phone pings placed the phones belonging to Brown-Camp, the co-defendant, and the victim near the same cell phone towers for an hour leading up to the alleged time of the murder). Finding no abuse of discretion on the part of the trial court, we conclude Brown-Camp is entitled to no relief on this claim.

Next, Brown-Camp argues the trial court abused its discretion when it ordered his sentence for criminal conspiracy to run consecutively to his sentence for third-degree murder. *See* Brown-Camp's Brief at 20. He insists the combined sentences "essentially result in close to a life sentence" for crimes that "were committed as part of the same offense and involved a single victim." *Id.* at 21.

This issue concerns a challenge to the discretionary aspects of Brown-Camp's sentence, and, accordingly, is not appealable as of right, but "must be considered a petition for permission to appeal." ***Commonwealth v. Best***, 120 A.3d 329, 348 (Pa. Super. 2015) (quotation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved [the] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with

respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Brown-Camp complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence, and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether he has raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). Here, Brown-Camp's sole challenge to his sentence is based upon the trial court's imposition of a consecutive term of imprisonment for his conviction of criminal conspiracy.

> Long standing precedent of this Court recognizes that 42 Pa.C.S.A. [§] 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. *Commonwealth v. Graham*, 541 Pa. 173, 184, 661 A.2d 1367, 1373 (1995); *see also Commonwealth v. Perry*, 883 A.2d 599,

> 2005 Pa.Super. Lexis 2892 (Pa. Super. August 10, 2005), and the cases cited therein. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. **Commonwealth v. Johnson**, 873 A.2d 704, 709 n. 2 (Pa. Super. 2005); **see also Commonwealth v. Hoag**, 445 Pa. Super. 455, 665 A.2d 1212, 1214 (1995) (explaining that a defendant is not entitled to a "volume discount" for his or her crimes).

**Commonwealth v. Marts**, 889 A.2d 608, 612 (Pa. Super. 2005). A limited exception to this rule was recognized in **Commonwealth v. Dodge**, 957 A.2d 1198 (Pa. Super. 2008), *appeal denied*, 980 A.2d 605 (Pa. 2009), where a panel of this Court concluded the defendant's aggregate sentence of 58½ to 128 years' imprisonment was excessive and clearly unreasonable, when the trial court imposed 37 consecutive, standard range sentences for receiving stolen property, much of which consisted of costume jewelry. **See id.** at 1199-1201.

The facts in the present case are not similar to those in **Dodge**. Brown-Camp was convicted of only two crimes, for which the court imposed consecutive terms of imprisonment. His claim that the imposition of a two and one-half year minimum sentence for conspiracy consecutive to his 20-year minimum sentence for third-degree murder amounted to an excessive sentence is specious. Accordingly, we find Brown-Camp has failed to raise a substantial question for our review.

Brown-Camp's next three claims involve the trial court's admission of evidence.[5] It is well settled that "[a] trial court has broad discretion to

---

[5] We have reordered Brown-Camp's remaining issues for ease of disposition.

determine whether evidence is admissible, and [its] ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." ***Commonwealth v. Rosser***, 135 A.3d 1077, 1087 (2016) (*en banc*) (citation and some punctuation omitted), *appeal denied*, 168 A.3d 1237 (Pa. 2017).

First, Brown-Camp asserts the trial court erred when it permitted Reginald Tyler to testify regarding the contents of a text message he claimed he had received from the victim on the night of the murder which stated, "[i]f anything fishy happened to me, B-Y did it." N.T., 2/23/2017, at 158. B-Y was identified by Tyler, and members of the victim's family, as Brown-Camp. Significantly, the Commonwealth was not able to produce the actual text message, since it had been deleted from Tyler's cell phone.

By way of background, the Commonwealth planned to introduce the substance of this text message in two ways. First, as noted above, Tyler testified regarding the text of the message he received. Second, the Commonwealth had obtained a screenshot of a similar text, purportedly written by the victim on the night of his murder, which was forwarded to the victim's mother by an unidentified female friend. The message read, "if some fishy shit happen, I was wit B-Y." N.T. 2/23/2017, at 7. Brown-Camp filed a pretrial motion in *limine* seeking to exclude the writing "[b]ecause there is no evidence authenticating the writing in question as being written and sent by" Brown-Camp. Motion in *Limine*, 2/20/2017, at 1-2.

During argument on the motion, the parties discussed both Tyler's proposed testimony and the screenshot of the message received by the victim's mother. After the court expressed its reservation about permitting the screenshot to be introduced as evidence since its sender was unidentified, the following exchange took place:

> [Commonwealth]: I think it would come in under Mr. Tyler, who actually received the message. Although he didn't save the message, he is the one who physically saw it. He can testify to what he saw and what he read on his phone that night.
>
> THE COURT: Yes, he can testify to it even though he doesn't have it anymore and you would have to explain why he would erase that[.]
>
> [Brown-Camp's counsel]: To me, Your Honor, there is the best evidence rule. That is a writing that he must produce. There is a best evidence rule with regard to that and there are things they could have done to get this available.
>
> First of all, if the victim's mother is the one who received it from the friend, you can't get a screenshot without having their phone number and find out their identity through social media.
>
> THE COURT: The decedent's mother can't testify that she received it from the female. She can't. That does not come in.

N.T., 2/23/2017, at 9-10. Despite further argument by the attorney for the Commonwealth, the court did not alter its ruling regarding the text forwarded to the victim's mother. However, the court explained:

> You have another way of getting it in. You can get it in through the witness who says I saw it and deleted it. Even though it is not the best evidence, I will allow that and the jury can make the decision.

*Id.* at 14. Counsel for Brown-Camp's co-defendant emphasized the importance of the best evidence rule, particularly where, as here, the message

Tyler said he received was different than the message contained on the screenshot.[6] *See id.* at 14-15. Counsel further argued: "[W]ithout having the actual message, he can't testify to its contents because we don't have it to cross-examine him on it to show whether or not, in fact, it was sent from [the victim], the time it is sent and exactly what the exact wording is[.]" *Id.* at 15. Nevertheless, the trial court stated counsel could "cross-examine [Tyler] on it." *Id.* Brown-Camp's counsel then clarified that Tyler would have to testify from memory, which the court agreed. *See id.* Counsel ended the discussion by stating, "Just note my objection, Judge." *Id.* at 16. There was no further objection by either Brown-Camp or his co-defendant when Tyler recalled the message he received during his direct testimony. *See id.* at 158.

It is evident from our review of the motion *in limine*, as well as the argument before trial, that Brown-Camp's objection to Tyler's testimony was based on the best evidence rule, *i.e.*, claiming Tyler's testimony regarding the content of the text message he allegedly received should have been precluded because he could not produce the actual message. However, on appeal, Brown-Camp focuses on the inadmissibility of the testimony as hearsay. *See* Brown-Camp's Brief at 23-25. He argues the statement does not meet the "indicia of reliability" required for an exception to the hearsay rule, nor does it fall within either of the hearsay exceptions referred to by the trial court in its opinion. *Id.* at 25.

---

[6] Tyler's message stated, "B-Y did it," while the other message stated, "I was wit B-Y." *See* N.T., 2/23/2017, at 7.

The Commonwealth, however, insists Brown-Camp's hearsay objection is waived. *See* Commonwealth's Brief at 23. We agree.

> In order to preserve an evidentiary objection for purposes of appellate review, a party must interpose a timely and specific objection in the trial court. "The rule is well settled that a party complaining, on appeal, of the admission of evidence in the [c]ourt below will be **confined to the specific objection** there made." *Commonwealth v. Cousar*, 593 Pa. 204, 928 A.2d 1025, 1041 (2007), *quoting Commonwealth v. Boden*, 399 Pa. 298, 159 A.2d 894, 900 (1960).

*Commonwealth v. Thomas*, 194 A.3d 159, 166 (Pa. Super. 2018) (emphasis supplied). Furthermore, this Court will not overlook waiver simply because the trial court addressed the issue in its opinion. *See Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1287-1289 (Pa. Super. 2004) (*en banc*) (defendant's failure to object to admissibility of inflammatory photographs before or during trial waived issue for review on appeal, despite the fact the defendant raised the claim in Pa.R.A.P. 1925(b) statement and court addressed it in opinion). Therefore, Brown-Camp is entitled to no relief on this claim.[7]

As noted above, Brown-Camp raises two additional evidentiary challenges. First, related to his last claim, Brown-Camp argues the trial court

_____

[7] We note, too, that Brown-Camp did not object to Tyler's testimony as hearsay in his Pa.R.A.P. 1925(b) statement. Rather, he simply recited the trial court's ruling that "Mr. Tyler is limited to testifying from memory about the message because the exact device is lost/unavailable/unknown." 1925b, 10/17/2017, at ¶ 5. Accordingly, we could find this claim waived on that basis as well. *See* Pa.R.A.P. 1925(b)(4).

- 11 -

erred when it permitted a detective to identify the aforementioned screenshot of the text message forwarded to the victim's mother by an unidentified friend. *See* Brown-Camp's Brief at 30.

As explained *supra*, the trial court precluded the Commonwealth from introducing the unauthenticated screenshot into evidence. During the lead detective's cross-examination, counsel for Brown-Camp asked the detective about a missing person's report, prepared by another police department, which indicated a family member of the victim had received a text from the victim that stated he was with "B-K" at the time of his murder. N.T., 2/27/2017, at 172. "B-K" was identified by family members as someone other than Brown-Camp.[8] *See id.* The next day, Brown-Camp called to the stand the police sergeant who generated the missing person's report. *See* N.T., 2/28/2017, at 22. He then questioned the sergeant about his report, which referred to a text received by a family member that stated, "I'm with B-K and if anything happens, that's who I am with." *Id.* at 27. The Commonwealth later recalled the detective on rebuttal, and asked him to identify the screenshot provided by the victim's family in which the victim stated he was with "B-Y." *See id.* at 51-54.

Brown-Camp insists the trial court erred in admitting the text message, which he maintains was "double hearsay." Brown-Camp's Brief at 30.

---

[8] As noted *supra*, Brown-Camp's nickname was "B-Y."

However, as the trial court noted, the evidence "was only admissible for a very limited purpose; for use as rebuttal evidence to show why [the detective] focused on B-Y rather than B-K in his investigation."[9] Trial Court Opinion, 1/16/2018, at 22. This Court has recognized "a litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *Commonwealth v. Powell*, 171 A.3d 294, 299 (Pa. Super. 2017), *appeal denied*, 183 A.3d 975 (Pa. 2018).[10] Because we agree that, here, Brown-Camp opened the door to this evidence, we find he is entitled to no relief.

Brown-Camp's remaining evidentiary issue asserts "the trial court impermissibly allowed the Commonwealth to question [witness Melissa Palmer] regarding a document prepared by the police tip line, and that she refused to adopt." Brown-Camp's Brief at 28. He contends the document should have been excluded because he was unable "to cross-examine the individual who prepared the tip line report." *Id.* at 29. Accordingly, he

---

[9] The trial court also found the text message screenshot was "properly authenticated" by the testimony regarding the "historical cell tower analysis." Trial Court Opinion, 1/16/2018, at 22-23. However, it is well-settled that we may affirm the ruling of a trial court on any basis. *Commonwealth v. Reed*, 107 A.3d 137, 144 (Pa. Super. 2014).

[10] *See id.* at 300 (finding no error when accomplice was permitted to testify that she and defendant had participated in a prior robbery when defendant opened the door to the testimony by "creat[ing] the false impression that he had no relationship with" the accomplice).

- 13 -

maintains the court violated his constitutional right to confront witnesses against him. *See id.* at 28.

The trial court summarized Palmer's trial testimony as follows:

Melissa Palmer, [Brown-Camp's] cousin, testified that she received a message from [him] on either April 24th or 25th of 2013 telling her to contact him about something important. Palmer testified on the stand that she was taking Percocet, Xanax, and had just been released from an inpatient mental health facility and could not remember dates or details she had told the detective during her statement. She was then impeached with her statement wherein she told detectives that she knew the decedent and that [Brown-Camp] told her that he and the decedent were involved in drug activity together. [Brown-Camp] made connections for the decedent to buy weed and cocaine in Philadelphia to sell in Delaware. A few days after receiving the message that [Brown-Camp] wanted to speak to her, Palmer and [Brown-Camp] arranged to meet at the Belmont Plateau in Fairmount Park in Philadelphia. [Brown-Camp] and [his] co-defendant were together as [Brown-Camp] spoke with Palmer. [He] asked [her] questions about her boyfriend who had been convicted of murder. [Brown-Camp] told Palmer that he was being blamed for the decedent's death. He admitted that he, "set Tev up, that him and the other guy picked Tev up in Delaware and they brought him to Southwest Philly by saying that they were going to rob a drug dealer[.]" [Brown-Camp] then told Palmer that he was not the shooter, but that he was the one who set up the decedent.

The defense attempted to impeach Palmer with a letter purportedly written by her stating that the detectives told her what to say in her statement. Palmer denied writing the letter but testified that the police just "popped up" and took her to the homicide division to give a statement. On re-direct, Palmer was confronted with a call she made to the tip line on June 15, 2013, three (3) days before she gave her statement to homicide detectives. Palmer's call to the tip line was redacted and was only admitted to show that it was Palmer who initiated contact with the police.

Trial Court Opinion, 1/16/2018, at 5-6 (record citations omitted).

In addressing this claim, the court explained that the tip line printout was admitted as a prior inconsistent statement.

> Pa.R.E. 613 provides that a witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness, (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness; (2) the witness is given an opportunity to explain or deny the making of the statement; and (3) an adverse party is given an opportunity to question the witness. Pa.R.E. 613(a) and (b).

> The defense attempted to impeach Palmer with a letter purportedly written by her, stating that the detectives told her what to say in her statement. Palmer denied writing the letter but testified that the police just "popped up" and took her to the homicide division to give a statement. On redirect Palmer was confronted with a printout of a call she made to the police tip line on June 15, 2013, three (3) days before she gave her statement to homicide detectives. Palmer's call to the tip line was redacted and was only admitted to show that it was Palmer who initiated contact with the police. Ultimately, Palmer agreed that she called the tip line.[11]

> The trial court, in its discretion and under Pa.R.E. 613, properly allowed the admission of the printout for the purpose of impeaching Palmer with her prior inconsistent statement.

*Id.* at 21.

We agree with the analysis of the trial court, and rest on its well-reasoned basis. Furthermore, we note that because the information in the tip line printout was not offered for its truth, but rather, as a prior inconsistent statement by the witness, it does not constitute hearsay; accordingly, Brown-

---

[11] *See* N.T., 2/24/2017, at 122-123.

Camp's Confrontation Clause rights were not implicated. ***See Commonwealth v. Estepp***, 17 A.3d 939, 945 (Pa. Super. 2011) (finding no error in permitting police officer to testify to out-of-court statement by confidential informant; the evidence was "used solely to explain [the officer's] course of conduct"), *appeal dismissed as improvidently granted*, 54 A.3d 22 (Pa. 2012). Therefore, this claim, too, warrants no relief.

Lastly, Brown-Camp contends the trial court abused its discretion when it denied his motion for a mistrial after Tyler "referenced that [Brown-Camp] was allegedly known as a serial robber around the neighborhood." Brown-Camp's Brief at 26. He maintains the testimony was impermissible as evidence of his prior bad acts, and "could not be corrected by a curative instruction" particularly because he was charged with and convicted of conspiracy to commit robbery. ***Id.*** at 27.

When considering a ruling on a motion for a mistrial, we must bear in mind that "[i]t is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted." ***Commonwealth v. Johnson***, 668 A.2d 97, 103 (Pa. 1995), *cert. denied*, 519 U.S. 827 (1996). "[A] mistrial is only warranted where the incident upon which the motion is based is of such a nature as to deny the defendant a fair trial." ***Id.*** (citation omitted).

Brown-Camp's claim is based on the following exchange, after Tyler identified the person referred to as "B-Y" in the text as Brown-Camp:

[Commonwealth]: How did you know B-Y?

[Tyler]:  I knew him as the boy from Philly that be robbing everybody.

[Co-Defendant's counsel]:  Objection, Your Honor.

[Brown-Camp's counsel]:  Objection.

THE COURT:  Sustained.  You didn't grow up with him?

[Tyler]:  No, I didn't.  That is how I knew him.

THE COURT:  Just disregard that about his hearsay knowledge of –

[Tyler]:  Hearsay?

THE COURT:  Sir, never answer me back.  Answer her questions.

[Tyler]:  Yes, ma'am.

THE COURT:  Just do what you are supposed to do.  Go ahead.

N.T., 2/23/2017, at 159-160.  Shortly thereafter, Brown-Camp's counsel asked to see the court at sidebar, where he moved for a mistrial.  Counsel argued:  "The Commonwealth is alleging this is a robbery and the first thing out of the witness' mouth is I know him to be a robber."  *Id.* at 161.  Counsel also insisted the testimony was prejudicial, and could not be cured by a curative instruction.  The court offered to provide additional curative instructions to the jury, which counsel did not accept, but denied the motion for a mistrial.  *See id.*

The trial court addressed this issue in its opinion as follows:

Review of a trial court's denial of a motion for a mistrial "is limited to determining whether the trial court abused its discretion." ***Commonwealth v. Fortenbaugh***, 69 A.3d 191, 193 (2013) (internal quotation marks omitted).  A trial court may grant a mistrial "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive

- 17 -

the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Commonwealth v Simpson**, 562 Pa. 255, 754 A.2d 1264, 1272 (2000). A mistrial "is not necessary where cautionary instructions are adequate to overcome prejudice." **Com**[**monwealth**] **v. Cash**, 137 A.3d 1262, 1273 (2016[,] *citing* **Commonwealth v. Chamberlain**, 612 Pa. 107, 30 A.3d 381,422 (2011).

A trial court may remove a purported taint through curative instructions. **Commonwealth v. Stilley**, 689 A.2d 242, 250 (Pa. Super. 1997) (citations omitted). In most instances, a curative instruction to the jury regarding the potentially prejudicial event is presumed to be sufficient to overcome the potential prejudice to the defendant from the event. **Com**[**monwealth**] **v. Thornton**, 791 A.2d 1190, 1193 (2002). **See e.g. Commonwealth v. Johnson**, 846 A.2d 161, 167 (Pa. Super. 2004) (curative instruction to jury adequate to obviate prejudice from remark made by witness). **See also Commonwealth v. Dennis**, 715 A.2d 404, 410 (1998) (citing **Commonwealth v. English**, 699 A.2d 710 (1997) ("It is well -established that juries are presumed to follow the trial court's instructions["]). **See Commonwealth v. Bronshtein**, 691 A.2d 907, 916 n.16 (1997); **Commonwealth v. Jones**, 668 A.2d 491, 503-04 (1995) (citing **Commonwealth v. Baker**, 531 Pa. 541, 559, 614 A.2d 663, 672 (1992).").

The jury is presumed to follow the court's instructions. Here, the curative instruction was to disregard the comment made by the witness, which presumably the jury was able to follow. Counsel made a strategic decision not to highlight this testimony further with an additional curative instruction.

Therefore, the trial court did not err when it denied the defense motion for a mistrial.

Trial Court Opinion, 1/16/2018, at 19-20. Here, we find no basis to disagree with the trial court's determination that Tyler's passing reference to Brown-Camp's alleged prior bad acts, coupled with the court's immediate instruction to the jury to disregard the statement, did not prejudice Brown-Camp to the

extent he was denied a fair trial. **See Johnson**, **supra**. Therefore, we again rest upon the well-reasoned decision of the trial court.

Because we conclude Brown-Camp is not entitled to relief on any of the claims raised in his direct appeal, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/24/19