IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G&J Excavating, LLC, : 
                Appellant : 
                 : 
                 : 
      v. : 
                 : 
Western Clinton County : No. 120 C.D. 2021
Municipal Authority : Submitted: July 1, 2022

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: October 18, 2022

G&J Excavating, LLC (G&J), the plaintiff in this case, appeals from a judgment entered on a jury verdict in the Court of Common Pleas of Clinton County (trial court). The jury found that the defendant, Western Clinton County Municipal Authority (Authority), was not negligent in installing a sewer lateral on G&J's property. Thus, the jury rejected G&J's claim that the Authority was liable for erosion damage to G&J's property. On appeal, G&J argues that the trial court erred by excluding evidence of the Authority's liability insurance and allowing evidence of alleged dumping of dirt on G&J's property, and that the jury's verdict was against the weight of the evidence. We affirm the trial court's judgment.

## I. Background

This action arose from G&J's request for a lateral sewer connection from the Authority's sewer main to the rear of G&J's commercial building in Renovo, Pennsylvania. A bank near the rear of the building slopes down to the Susquehanna River, and G&J contends the Authority's activities in installing the lateral connection in 2016, as well as alleged failure to control subsequent soil movement in excavated areas, caused severe erosion to G&J's property, damaging its parking lot and threatening structural damage to its building.

Following a trial, a jury returned a verdict in favor of the Authority, answering in the negative the first question on the verdict slip, which asked whether the Authority was negligent. G&J filed a motion for post-trial relief, asserting three errors by the trial court. First, G&J argued that the trial court erred by ruling that G&J could not offer evidence at trial concerning the Authority's maintenance of liability insurance. Second, G&J asserted that the trial court improperly allowed evidence of the dumping of dirt on G&J's property or a nearby property, after ruling before trial that such evidence could not be offered; G&J argued that this error entitled it to a new trial. Third, G&J sought judgment notwithstanding the verdict (JNOV) on the basis that the jury's verdict was against the overwhelming weight of the evidence. The trial court denied G&J's post-trial motion, and this appeal followed.

## II. Discussion

### A. Evidence of Liability Insurance

In its first assertion of error, G&J contends it should have been allowed to offer evidence that the Authority maintained liability insurance. G&J insists it

2

was entitled to demonstrate to the jury that the Authority had the means to satisfy a damage award against it. We discern no merit in this argument.

> Our review of the trial court's evidentiary rulings is limited:
>
> The admission or exclusion of evidence . . . is within the sound discretion of the trial court. Thus[,] our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Worley v. Cnty. of Del.*, 178 A.3d 213, 228 (Pa. Cmwlth. 2017) (quoting *Crespo v. Hughes*, 167 A.3d 168, 181 (Pa. Super. 2017) (quotation marks and citations omitted)); *see also Commonwealth v. U.S. Min. Prods. Co.*, 927 A.2d 717, 731 (Pa. Cmwlth. 2007), *aff'd*, 956 A.2d 967 (Pa. 2008) (citing *McManamon v. Washko*, 906 A.2d 1259, 1268-69 (Pa. Super. 2006)).

Pennsylvania Rule of Evidence 411 provides: "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Pa.R.E. 411. Our Supreme Court has explained that "the existence, or availability, of insurance coverage is ordinarily not relevant or admissible in the context of tort litigation." *Zauflik v. Pennsbury Sch. Dist.*, 104 A.3d 1096, 1120 (Pa. 2014) (citing *Price v. Guy*, 735 A.2d 668, 671 (Pa. 1999)).

> The real dangers inherent in permitting this type of information to be placed before a jury are that the jury may be tempted to assess liability where none exists or to arrive at an excessive verdict based on sympathy for an injured plaintiff with the thought that it is not the defendant personally, but an insurance company, which will

3

> ultimately be called upon to bear the burden of payment of the verdict.

*Nicholson v. Garris*, 210 A.2d 164, 166 (Pa. 1965).

Notwithstanding this longstanding principle, G&J posits that showing a defendant's ability to pay for damages constitutes "another purpose" for which evidence of liability insurance may be admissible under Rule 411. Our Supreme Court has held to the contrary. *See Zauflik*, 104 A.3d at 1120 (quoting *Trimble v. Merloe*, 197 A.2d 457, 458 (Pa. 1964) (holding that, in tort cases, "consideration of the affluence of the defendant, *his ability to pay*, *or his liability insurance coverage* is improper, irrelevant, prejudicial, and clearly beyond the legally established boundaries") (emphasis added)).

G&J attempts to circumvent this clear legal principle by arguing that here, the Authority's ability to pay was actually an element of the claim that G&J was required to prove. G&J Br. at 15. G&J points to a jury instruction that stated, as an element of G&J's claim, that "[d]espite . . . notice, [the] Authority, *although having the means* and personnel to do so, failed to take necessary and appropriate remedial measures *to protect against the injury or damage* that occurred from the dangerous condition. . . . ." *Id.* (quotation marks omitted) (emphasis added). Contrary to G&J's assertion, however, this jury instruction had nothing to do with either liability insurance or the Authority's ability to pay for damages it allegedly caused. On its face, the instruction merely related to whether the Authority had the means to have taken precautionary measures to *prevent* damage. Whether the Authority maintained liability insurance was irrelevant to that question.

4

We discern neither an abuse of discretion nor an error of law in the trial court's ruling. Accordingly, we conclude the trial court properly excluded evidence of the Authority's liability insurance coverage.[1]

## B. Evidence of Dumping Dirt

Next, G&J argues the trial court should have granted a new trial because the Authority's counsel persistently elicited testimony concerning alleged dumping of dirt on G&J's property or a neighboring property, despite the trial court's pretrial ruling prohibiting the introduction of such evidence. Although the Authority did offer some evidence of dumping, the trial court sustained G&J's objections and also gave a curative instruction to the jury, to which G&J did not object until its post-trial motion. Therefore, we reject G&J's assertion of entitlement to a new trial.

During a pretrial conference just before the start of trial, the trial court ruled that an Authority witness, Mary Ann Bower, would be permitted to testify concerning "any dumping that happened between 2010 and 2016 at the subject property on the specific areas involved in this matter." Reproduced Record (RR) at 41a. However, the trial court ruled that "Ms. Bower [would] not be able to testify about dumping in any other area other than the subject property that occurred between 2010 and 2016." *Id.*

During the trial, the Authority's counsel repeatedly sought to elicit testimony that G&J dumped dirt on its own property, apparently in an attempt to suggest that G&J, not the Authority, caused any erosion that may have occurred on the property. The first time counsel asked about dumping, G&J objected, and in a

---

[1] In a related argument, G&J also contends the trial court erred by not granting a new trial based on its purported error in excluding evidence of the Authority's liability insurance coverage. We need not reach that issue in light of our conclusion that the evidence was properly excluded.

sidebar conference, the trial court sustained the objection, stating the alleged dumping to which counsel referred was not on the property at issue and would confuse the jury. RR at 94a-95a. Later, however, counsel elicited testimony from a witness other than Ms. Bower concerning dumping of dirt, and G&J initially asserted only hearsay objections to that testimony. *See* RR at 143a-45a. Eventually, G&J objected that the testimony was precluded by the trial court's pretrial ruling. In the ensuing sidebar conference, counsel for the Authority argued that the evidence he was eliciting related to dumping on G&J's property, not another property. RR at 146a-48a. On that basis, the trial court allowed some further questions on the dumping issue, but warned the Authority's counsel that if he did not connect the dumping to the property at issue, the trial court would give a curative instruction. *Id.*

Thereafter, the witness testified, without an objection from G&J, that he was aware of dumping on G&J's property behind G&J's building. RR at 149a. Upon further questioning, however, the witness described the precise location of the alleged dumping, and G&J objected that the described location was not G&J's property. RR at 154a-55a. At that point, the trial judge left the bench in order to point out the alleged dumping location on a photo exhibit that was before the jury and instructed the jury and counsel as follows:

> Ladies and gentlemen, I'm going to get up here and show you something so we all understand what's going on here. Hopefully, I won't fall. This is what happens when -- the dumping is to have occurred out here. *That is not [G&J's] property.*
>
> We went over this with the attorneys before this started, and there was an offer during the case that it was going to be behind [G&J's] property where the incident occurred. It's not there. *So, the dumping does not affect behind the*

6

*property because the dirt was not dumped on it.* I'm trying to do this the best I can given how this is set up.

*So, [the Authority's] allegation that somehow this dumping was dumped over here, it didn't happen.* Okay? Do you want to hold that again because I have to walk over this stuff? No more questions on that issue.[2]

RR at 155a-56a (emphasis added). Thus, the trial court specifically instructed the jury, not merely that it should ignore the dumping evidence, but that *no dumping occurred on G&J's property. Id.*

Notably, G&J did not object to the sufficiency of the trial court's curative instruction when it was given. *See* RR at 156a. By acquiescing in the instruction at that time, G&J waived any later objection that the instruction was inadequate. *See Commonwealth v. Jones*, 668 A.2d 491, 513 & n.27 (Pa. 1995) (holding that, when an objection is sustained and a curative instruction is given, and the objecting party fails to object to the curative instruction or to request any further instruction, the curative instruction is presumed to be satisfactory and to cure any prejudice, as the jury is presumed to follow the court's instructions); *Commonwealth v. Page*, 965 A.2d 1212, 1222 (Pa. Super. 2009) (explaining that where a curative instruction issued in response to an objection and the objecting party does not object to the instruction, "any claim in relation to its adequacy is waived"); *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div., Emerson Elec. Co.*, 781 A.2d 1263, 1275 n.12 (Pa. Super. 2001), *aff'd without op.*, 811 A.2d 565 (Pa. 2002) (stating that failure to object indicates that the party "is satisfied with the curative instruction and that any prejudice is cured" because the jury is presumed to follow the court's instruction).

---

[2] Counsel posed no further questions on the dumping issue following the trial court's instruction.

7

In addition, the record does not indicate that G&J requested a jury instruction on the issue or that it requested a new trial on that basis during trial, either before or after the jury returned its verdict. *See* RR at 417a-18a (G&J's oral motion for JNOV based on the evidence adduced at trial; no motion was made for a new trial based on alleged insufficiency of curative instruction regarding the dumping issue). G&J first raised the issue in its motion for post-trial relief. *See* RR at 9a-10a & 13a. As this Court has explained, waiver occurs when an assertion of error that should be raised at trial is not raised until post-trial motions.

> Pa. [R. Civ. P.] 227.1(b)(1) specifically addresses post-trial motions. It provides that post-trial relief may not be granted unless the grounds were raised at trial by some appropriate method, if available. Consistent with this directive, our Superior Court requires a motion for directed verdict during trial as a prerequisite to a post-trial motion for JNOV based on the state of the evidence. . . . Because this approach has the salutary effect of submitting the issue to the trial judge for initial evaluation during trial, when the proofs are still fresh, and is consistent with past practice and with the current rule governing post-trial practice, we agree with this approach and adopt it.

*U.S. Min. Prods.*, 927 A.2d at 725 (citations omitted). Thus, we conclude that G&J further waived its request for a new trial by failing to assert that request until its post-trial motion.

Moreover, even if the trial court's curative instruction had been timely challenged, it would not support granting a new trial. "In order to obtain a new trial, . . . the moving party must demonstrate in what way trial error caused an incorrect result." *U.S. Min. Prods.*, 927 A.2d at 723 (citing *Clack v. Dep't of Transp.*, 710 A.2d 148, 151 n.5 (Pa. Cmwlth. 1998)). "A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate prejudice resulting from the

8

mistake." *U.S. Min. Prods.*, 927 A.2d at 723 (citing *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000)); *City of New Castle v. Uzamere*, 829 A.2d 763, 767 (Pa. Cmwlth. 2003).

A prompt curative instruction is generally sufficient to cure a challenged defect, and a jury is presumed to heed a court's curative instruction. *Mount Olivet*, 781 A.2d at 1275 n.12; *see also Commonwealth v. Dennis*, 715 A.2d 404, 410 (Pa. 1998) (explaining that a "trial court's curative instruction is presumed to be sufficient to cure any prejudice" to the moving party, and no relief is due where the moving party "offers no evidence to rebut this presumption") (citing *Commonwealth v. English*, 699 A.2d 710, 714 (Pa. 1997) (stating "it is well established that juries are presumed to follow the trial court's instructions")). Here, G&J has not demonstrated that it has suffered prejudice from the trial court's issuance of a curative instruction.

For all of these reasons, we conclude the trial court did not err in refusing to grant a new trial based on the Authority's improper introduction of evidence concerning alleged dumping of soil.[3]

---

[3] G&J also asserted that counsel for the Authority violated the Pennsylvania Rules of Professional Conduct (RPCs), 204 Pa. Code §§ 81.1-81.506, by disregarding the trial court's ruling concerning evidence of dumping. The trial court declined to rule on that issue. *G&J Excavating, LLC v. W. Clinton Cnty. Mun. Auth.* (C.P., No. 1195-2017, filed Jan. 11, 2021), slip op. at 8. We likewise do not address that issue. Alleged violations of the RPCs by the Authority's counsel are not relevant to the sufficiency of the trial court's curative instruction, which is the only issue raised on appeal regarding the dumping evidence. *Accord Keppol v. Workers' Comp. Appeal Bd. (Acme Mkts., Inc.)* (Pa. Cmwlth., No. 996 C.D. 2011, filed Feb. 10, 2012), slip op. at 4-5 (declining to remand for a ruling on an alleged violation of the RPCs, where whether a party's counsel violated the RPCs was not relevant to the issue in the case, *i.e.*, whether the employer was entitled to a suspension of workers' compensation benefit payments). Moreover, as Section 81.2(19) of the RPCs explains, the RPCs were not created for use by opposing parties in litigation:

(19) Violation of [an RPC] should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition,

9

## C. Weight of the Evidence

In its final argument, G&J contends the trial court should have granted its request for JNOV based on the evidence. This argument is without merit.

"This Court's standard of review from a trial court's order denying a motion for [JNOV] is limited to determining whether the trial court abused its discretion or erred as a matter of law." *Alleyne v. Pirrone*, 180 A.3d 524, 539 n.11 (Pa. Cmwlth. 2018) (citing *Hall v. Kiger*, 795 A.2d 497, 499 (Pa. Cmwlth. 2002)). JNOV may be entered where the movant is entitled to judgment as a matter of law or where the evidence is such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992). Thus, JNOV "should not be entered where the evidence is conflicting on a material fact, and a reviewing court is required to consider the evidence, together with all reasonable inferences, in a light most favorable to the verdict winner." *Moody v. Phila. Hous. Auth.*, 673 A.2d 14, 17 (Pa. Cmwlth. 1996).

G&J asserts that "the uncontroverted evidence in this matter establish[ed] facts sufficient to form a basis for each of the elements necessary to

---

violation of [an RPC] does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The [RPCs] are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the [RPCs] can be subverted when they are invoked by opposing parties as procedural weapons. The fact that [an RPC] is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the [RPCs] should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty.

204 Pa. Code § 81.2(19).

10

establish the cause of action . . . ." G&J Br. at 22. That is not the applicable standard. Moreover, the trial court rejected this argument, observing that the evidence in the record was conflicting regarding the Authority's negligence. Our review of the record supports the trial court's conclusion.

G&J bases its claim of negligence on assertions that the Authority's personnel performed activities that caused erosion of G&J's property, damaging its parking lot and putting its building at risk of damage. The Authority offered substantial evidence contradicting those assertions, including the following examples.

An Authority witness testified that its personnel moved only the top couple of inches of dirt, and only on flat land, not on any bank, when working on connecting a sewer lateral to G&J's property. RR at 227a-28a. In addition, the Authority offered testimony that it was G&J's principal, not Authority personnel, who dug a trench down the slope of the bank and removed vegetation. *Id.* at 228a.

A disinterested witness from the Pennsylvania Department of Environmental Protection testified that there was already some erosion on the property in 2010 and that when he viewed photographs of the property at G&J's request after the Authority's work on the property in 2016, he did not see any evidence of accelerated erosion. *Id.* at 316a-18a. The witness testified further that he sent G&J a letter at that time explaining that the Department of Environmental Protection found no regulatory violations and no evidence of accelerated erosion. *Id.* at 318a-19a.

The Authority also presented testimony from an expert witness who visited the property in 2018 and took photographs at that time. RR at 336a. The witness found no erosion damage to G&J's building, no movement of soil or grass,

11

and no erosion damage to the parking lot. *Id.* at 343a-47a & 353a-55a. The witness saw only minor natural erosion, not caused by the Authority, that could be stabilized, if desired, with compacted soil and vegetation. *Id.* at 351a-52a.

Indeed, G&J's own evidence was not unequivocal. G&J's expert witness opined that there was one crack in G&J's parking lot related to erosion and the bank's alleged loss of stability, but he acknowledged that most of the damage to the parking lot was "alligator cracking" that was related to age and wear and tear. RR at 299a. Notably, G&J's expert did not offer any opinion on the cause of any erosion on G&J's property; his testimony was limited to estimating the cost to correct the alleged damage – including the damage he conceded was due to natural aging and wear and tear. RR at 295a.

Even from this limited recitation of record evidence, it is clear that the parties presented conflicting evidence and that reasonable minds could differ concerning whether the Authority acted negligently. Accordingly, we conclude that the trial court did not abuse its discretion or commit legal error by denying G&J's request for a new trial based on the weight of the evidence.

### III. Conclusion

Based on the foregoing discussion, the judgment of the trial court is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G&J Excavating, LLC, : 
          Appellant :
           :
      v. :
           :
Western Clinton County : No. 120 C.D. 2021
Municipal Authority :

O R D E R

AND NOW, this 18th day of October, 2022, the judgment of the Court of Common Pleas of Clinton County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge